ROBERT N. GARAFOLA, as Administrator of the Estate of FLORENCE GARAFOLA, Deceased, Respondent, et al., Plaintiff, v. MAIMONIDES HOSPITAL OF BROOKLYN et al., Appellants.

First Department, November 19, 1964.

*John Nielsen* of counsel (*Thomas O. Perrell* with him on the brief; *Perrell, Nielsen & Stephens,* attorneys), for Maimonides Hospital of Brooklyn, appellant.

*Donald J. Fager* of counsel (*Martin, Clearwater & Bell,* attorneys), for Abraham Prostkoff and another, appellants.

*Leon Vogel* for respondent.

McNALLY, J. The court is unanimous in concluding that plaintiff failed to prove negligence on the part of defendants Abraham Prostkoff and Jessie M. Frankel. The case against them was submitted to the jury solely on the claim that the tetanus infection was consequent on the negligent surgical treatment of the decedent. The evidence enabled a finding of causal relation between the surgery and the onset of the infection but fails to establish negligence in the surgical procedures.

The cause was also submitted to the jury against the defendant Maimonides Hospital of Brooklyn on negligent failure to properly treat decedent on and after June 13, 1954. The evidence enabled the jury to find the following.

Decedent was the patient of defendant Prostkoff, an obstetrician and assistant attending physician in obstetrics and gynecology of defendant hospital. Decedent was admitted for a repeat Caesarean section at term; she had previously had a Caesarean section. The operation was performed June 7, 1954; a normal baby girl was delivered. On June 10, 1954 decedent ran a temperature attributed to engorged breasts. Antibiotics were administered; her temperature subsided and on June 13, 1954 it was below 100. At 4:00 P.M. on June 13, 1954 decedent complained of soreness in the upper jaw region and difficulty in opening her mouth. Decedent was seen by a resident of defendant hospital; palliatives were administered. Decedent's obstetrician was not informed of the last-described symptoms of which he was first apprised on his hospital visit on June 14, 1954 at 10:00 A.M.

On June 14, 1954, at 10:00 A.M., defendant Prostkoff made a tentative diagnosis of possible severe neuritis, possible throat infection, possible tooth infection and possible tetanus. Defendant Prostkoff remained with his patient throughout June 14,

1954 until late that evening, returned early the morning of June 15 and was in close attendance on her until her demise at 9:20 P.M. of that day. Three thousand units of tetanus antitoxin were administered to the patient at 11:30 A.M. on June 14; medical consultations were had, medication administered to prevent convulsions, a special nurse assigned, airways introduced to enable the patient to receive oxygen, and an oxygen tank made available in the patient's room. Additional dosages of tetanus antitoxin were administered of 1,500 units on June 14 at 4:30 P.M. and 50,000 units on June 15 at 1:30 P.M. The patient suffered a final convulsion at 9:15 P.M. of that day and expired five minutes thereafter. The immediate cause of death was laryngospasm, caused by the tetanus toxin, resulting in pulmonary atelectasis, collapse of the lungs.

The customary practice at the defendant hospital regarding medical supervision of patients is for the treating doctor to see his patient each day, and if the patient's condition requires it, more often. In addition, the resident medical staff sees the patient at least once a day. If there is any significant adverse change in the patient, the treating doctor is promptly informed.

On June 13, 1954, at 4:00 P.M. the nurse and at 7:30 P.M. the resident knew the decedent complained of soreness in the upper jaw region and difficulty in opening her mouth. Codeine, nembutal and oil of wintergreen were administered. However, defendant Prostkoff, decedent's treating doctor and assistant attending physician on the staff of defendant hospital, was not informed of the additional symptoms manifested by the decedent. Prostkoff first became aware of the significant changes in the decedent 18 hours later on June 14, 1954 at 10:00 A.M. (Cf. *Murray* v. *St. Mary's Hosp.*, 280 App. Div. 803.) He immediately, continuously and intensively treated the patient as if she had a tetanus infection.

Tetanus is a bacterial disease which thrives in enclosed deep wounds and liberates a poison which attacks the nervous system, causing irritability, spasms and convulsions. The absence of countermeasures, inclusive of tetanus antitoxin, within 24 hours after it is manifested, is fatal. Whether the 18-hour delay in the treatment rendered to the decedent as evidenced by this record was a competent producing cause of her death was a jury question. This issue was ably, precisely and unequivocally presented to the jury by the trial court. The fact that the diagnosis of tetanus made on June 14 was tentative and one of several then made is of no consequence. The medical measures adopted and applied were as if tetanus was a possible cause of the decedent's condition.

The judgment should be modified, on the law, to the extent of dismissing the complaint as against defendants Abraham Prostkoff and Jessie M. Frankel, with costs to said defendants, and, as so modified, affirmed, with costs to plaintiff.

STEUER, J. (dissenting). Plaintiff administrator sues for wrongful death as a result of malpractice. Defendants are Maimonides Hospital and two private physicians who operated on the deceased and who had charge of her postoperative care. The first cause of action charges negligence in the performance of a Caesarean birth, with the consequence that a tetanus infection resulted, and in failure to take proper care of her thereafter. The second cause of action is for conscious pain and suffering. The third cause of action is by the plaintiff, husband of the deceased, individually for medical expense and loss of services.

The court submitted to the jury the following questions: 1. "Were there any negligent acts on the part of any of the defendants at the time of the operation that resulted in the introduction of tetanus germs into the body of Mrs. Garafola?" 2. "Was there any act of negligence on June 13th on the part of the hospital with respect to the care and treatment of Mrs. Garafola that resulted in her death?" The jury answered both questions in the affirmative and found a general verdict in favor of plaintiff against all defendants.

Plaintiff's case resolved into two distinct claims of negligence — first, the introduction of tetanus spores into the deceased's body in the course of the operation; second, the failure to diagnose the nature of the infection with reasonable professional competence and to treat it adequately. The court, with painstaking care, analyzed the evidence and submitted to the jury the two questions above set out. It should be noted that negligence on the second ground relates only to the hospital and is confined to the events that took place on a single day, June 13.

The majority has found that, on the charge of negligence involved in the operation itself and embraced in the first question submitted to the jury, the plaintiff failed to establish a case. While the memorandum does not so state *in haec verba,* this is a necessary holding. There was no proof of how the tetanus spores came into the deceased's blood stream. If the inference was proper that it was in the course of the surgical incisions, any inference of negligence would be attributable with equal force to the doctors and the hospital personnel participating in the operative procedure. A ruling that no inference of

negligence could be drawn from the testimony would therefore apply to all defendants, and a dismissal as to the individual defendants, the doctors, indicates that no cause of action on this branch of the case was established against anyone.

With that holding we are in accord. There is not a scintilla of evidence to rebut the showing that all the steps taken to insure antisepsis which are customarily used were taken. Nor is there any suggestion of any deviation from proper medical practice in this respect.

We turn now to the claim of negligence in regard to the events happening after the operation. It appears that the deceased continued under the care of her own physicians, particularly Dr. Prostkoff. The operation took place on June 7. On June 10 she developed some fever, which was successfully reduced. At 4:00 P.M. on June 13 the patient complained of soreness in the upper jaw region and difficulty in opening her mouth. At 7:30 P.M. of that day she was seen by a Dr. Weiss, a resident of the hospital. It may be safely assumed that he learned, or should have learned, of the deceased's complaint. At any rate, he prescribed medication to relieve the pain or discomfort. On the morning of the 14th, Dr. Prostkoff visited the patient and was acquainted with this symptom. Thereafter, he took complete charge and the hospital physicians are not charged with any lack of care or dereliction of duty thereafter.

Plaintiff's expert testified that on the 14th it was already too late and the deceased could not have been saved, and upon this contention no possible ground remained in the case for a claim of malpractice for anything done or omitted after June 13. Though plaintiff's expert was critical of the steps taken on the 14th, it is quite clear that these could, on plaintiff's theory, have no bearing on the death, and for that reason the court properly limited the claim of malpractice to the interval of time immediately following the report of the symptoms concerning the deceased's difficulty with her mouth.

So the issue of the hospital's liability depends on whether there was a failure on the part of its resident physician to diagnose the deceased's condition as tetanus infection on the evening of June 13, and to take steps based on such diagnosis, or to notify her physician. As there is no proof or even claim that Dr. Weiss recognized the condition as tetanus infection, his failure, if any, was in not recognizing it. However, that this failure was malpractice is completely belied by the proof.

On the morning of the 14th Dr. Prostkoff saw the patient and learned that she suffered from stiffness of the jaw on the 13th. He did not make a diagnosis of tetanus infection, though he

considered it as a remote possibility. Before making any such diagnosis, he called in specialists in the field. It appeared that no case of tetanus infection following a Caesarean operation had ever been recorded in medical history, and the remoteness of the possibility caused a reluctance to resort to corrective measures unless they were indicated. Specialists in different fields examined the deceased during the day on the 14th. None of them made a diagnosis of tetanus infection, though all recognized it as a possibility. She was accordingly given a small dose of tetanus antitoxin. It was not until the following day that a definite diagnosis of tetanus was made. That evening she died.

The salient facts are that from the symptoms which became known to Dr. Weiss on the 13th none of the six physicians, four of them specialists in various fields, made a diagnosis of tetanus infection. True, all of them recognized at the time that there was such a possibility. But none recommended treatment on the assumption that the deceased was so infected. This assemblage of medical talent was called to treat the patient rather than to theorize and criticize after the event. They saw the patient several hours after Dr. Weiss had seen her and had the benefit of observing whatever developed in the interim. At that later time, none of them reached the conclusion that the jury found Dr. Weiss not only should have reached and acted upon but that his failure so to act evidenced actionable lack of medical knowledge. Clearly it would have been highly improper for Dr. Weiss to have adopted any radical course of treatment for another doctor's patient. Doubtless his function would be to have given immediate advice of the development to the treating doctor. And there is no indication from any source that if Dr. Prostkoff had been informed of the symptom on the evening of the 13th he would have done anything different from what he did on the morning of the 14th.

Under these circumstances, the verdict against the hospital is clearly against the weight of the credible evidence and the verdict against it should be set aside and a new trial ordered.

BREITEL, J. P., and RABIN, J., concur with McNALLY, J.; STEUER, J., dissents in opinion, in which VALENTE, J., concurs.

Judgment modified, on the law, to the extent of dismissing the complaint as against defendants Abraham Prostkoff and Jessie M. Frankel, with $50 costs to said defendants, and, as so modified, affirmed, with $50 costs to plaintiff-respondent against defendant-appellant Maimonides Hospital of Brooklyn.